UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV2367 CDP |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

*Pro se* plaintiff Derrick Howard brings this action for wrongful foreclosure and to quiet title to property in St. Louis against defendant Bank of America. Howard has already lost a similar action against Bank of America for the same property in Missouri state court, however, and so Bank of America now moves to dismiss. Howard, a federal prisoner proceeding in forma pauperis, has also moved for an Order clarifying the payment of his filing fees and directing the Bureau of Prisons to withdraw funds from his prison account sequentially, rather than simultaneously. For the reasons that follow, I agree that dismissal is appropriate, and I will deny Howard's motion.

## Background

Howard is a prisoner in the United States Bureau of Prisons. He is currently housed in the U.S. Penitentiary in Coleman, Florida. In December of 2010, while

he was incarcerated in West Virginia, Howard filed this and three other *pro se* actions in the United States District Court for the District of West Virginia. That court transferred the actions here, and two of the four of them were assigned to me.[1] Howard was granted in forma pauperis status in each of his four cases, and court Orders were entered directing collection and payment of filing fees when funds were available for each of his four cases.

In this action, Howard alleges that Bank of America, through its predecessor-in-interest LaSalle Bank National Association, wrongfully foreclosed on his property at 4433 Kossuth Avenue, St. Louis, Missouri 63115 in December of 2007. He also asserts that Bank of America and its predecessors unlawfully claimed title pursuant to a fraudulent deed of trust. Howard seeks to quiet title to the property in his favor and requests other relief, including compensatory and punitive damages.

Bank of America has moved to dismiss the case, presenting evidence from a Missouri state-court proceeding in which Howard raised these same claims.[2] In

---

[1]The other case assigned to me bears case number 4:10CV2365 CDP; two cases were assigned to the Honorable Henry E. Autrey, and they bear case numbers 4:10CV2366 HEA and 4:10CV2368 HEA. The cases appear to be different, but they may involve some common factual background.

[2]In considering a motion to dismiss, a district court may look to the parties' pleadings as well as materials that are part of the public record, or that do not contradict the plaintiff's complaint. *See, e.g., State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

particular, Bank of America adduces a *pro se* petition Howard filed in February of 2009 in the Circuit Court of the City of St. Louis. In this petition, Howard sought to quiet title in the same property as in this case, 4433 Kossuth Avenue, St. Louis, Missouri 63115, alleging that Bank of America's predecessors-in-interest held title to that property pursuant to a fraudulent deed of trust. It is undisputed that Howard obtained a default judgment on this petition in July of 2009. Bank of America also presents its own Missouri state-court petition, which it filed in October of 2009, seeking to set aside the default judgment and to quiet title in the same property.[3] Howard filed an answer and counterclaims in December of 2009, raising the same allegations of wrongful foreclosure pursuant to a fraudulent deed of trust. On December 7, 2010, the Circuit Court consolidated the two cases and entered a Final Judgement and Order Quieting Title. This Order sets aside the default judgment previously awarded and quieted title to the property at 4433 Kossuth Avenue to Bank of America. Howard filed a notice of appeal to the Missouri Court of Appeals on January 21, 2011.

Howard has also moved for an Order clarifying the payment of his filing fees. He contends that the Bureau of Prisons deducts 80 percent of his preceding month's income whenever his account exceeds $10 to cover the fees for each of

---

[3]Bank of America's predecessor-in-interest, LaSalle Bank, originally filed the petition, but Bank of America was later substituted as the plaintiff of record after acquiring LaSalle Bank's interest in the deed.

the four cases pending in this Court, which deprives him of sufficient funds for purchasing writing tools and legal materials. He requests that funds be withdrawn sequentially so that he can have adequate resources to litigate this case.

### Discussion

A.  **Motion to Dismiss**

Bank of America moves to dismiss Howard's complaint under Rule 12(b)(6), Fed. R. Civ. P., arguing that Howard's claims are barred by the doctrine of res judicata. I agree, and also conclude that this Court lacks subject-matter jurisdiction over this case under the *Rooker-Feldman* doctrine, because Howard's complaint essentially seeks an appeal of the state court's Final Order quieting title in Bank of America. *See, e.g., Ballinger v. Culotta*, 322 F.3d 546, 549 (8th Cir. 2003) (under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction to hear claims that "in effect constitute[] a challenge to a state court decision.").

I first conclude that the state court's Final Order quieting title to Bank of America operates to bar Howard's claims under the doctrine of res judicata. This doctrine prevents "the relitigation of a claim on grounds that were raised or could have been raised in the prior suit." *Banks v. International Union Elec., Elec., Technical, Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004) (internal quotation marks and citation omitted). In determining whether res judicata applies to bar a litigant's suit, this Court considers: (1) whether the prior

judgment was rendered by a court of competent jurisdiction; (2) whether the prior judgment was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases. *Id.*

Here, there is no legitimate dispute that all three requirements are met. The Circuit Court for the City of St. Louis was a court of competent jurisdiction to quiet title in property within St. Louis, and the Final Order quieting title to that property to Bank of America was a final judgment on the merits of both parties' claims. Finally, both the parties and the cause of action in this case are the same as those in the state-court litigation: Howard previously sued Bank of America and its predecessors-in-interest for wrongful foreclosure and to quiet title in the property at 4433 Kossuth Avenue. He now brings those very same claims once more in this action.

Despite these undisputed facts, Howard argues that res judicata does not bar this action, because the Circuit Court did not specifically determine whether Bank of America foreclosed pursuant to a fraudulent deed of trust. This argument is meritless. In quieting title in Bank of America, the Circuit Court necessarily made a determination that Bank of America foreclosed pursuant to a legal deed of trust. In any event, the doctrine of res judicata "bars relitigation not only of those matters that were actually litigated, but also those which could have been litigated in the earlier proceeding." *King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th

Cir. 1992). Because all of Howard's present claims for wrongful foreclosure pursuant to a fraudulent deed of trust were and/or could have been litigated in the state-court action, Howard's complaint is barred by the doctrine of res judicata.

Reviewing Howard's complaint and other filings, it appears that he essentially seeks appellate review of the Circuit Court's final order. In particular, Howard claims that the Circuit Court denied him a fair opportunity to litigate his claims and asks this Court to reverse the Circuit Court's Final Order and quiet title in him. Under the *Rooker-Feldman* doctrine, however, this Court lacks subject-matter jurisdiction to do any such thing.

The *Rooker-Feldman* doctrine provides that a federal district court lacks jurisdiction to consider a claim which "in effect constitutes a challenge to a state court decision." *Ballinger*, 322 F.3d at 548 (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)). This is so because federal district courts "exercise original, not appellate, jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). Indeed, if a state trial court erred, its judgment is not void, but rather is to be reviewed and corrected by the appropriate state appellate court, and recourse to the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court. *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (internal citations omitted).

Within the Eighth Circuit, the *Rooker-Feldman* doctrine forecloses not only straightforward appeals, but also more indirect attempts by federal plaintiffs to undermine state court decisions. *Lemons v. St. Louis Cnty.*, 222 F.3d 488, 492 (8th Cir. 2000). Accordingly, courts are prohibited from exercising jurisdiction over claims that are "inextricably combined" with specific claims already adjudicated in state courts. *See id.* at 492-93. "A general federal claim is inextricably intertwined with a state court judgment 'if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it.'" *Id.* at 493 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

Here, Howard's claim for wrongful foreclosure and to quiet title can only succeed if the Circuit Court wrongly decided the issue before it – whether to quiet title to Bank of America. Because Howard's claims essentially seek to reverse the Circuit Court's Order quieting title to Bank of America, this Court lacks subject-matter jurisdiction to consider them under the *Rooker-Feldman* doctrine. As Howard himself admits, the issue is on appeal in the Missouri Court of Appeals. if the Circuit Court decided the issue incorrectly, that court – not this one – is the one to correct it.[4]

---

[4]Moreover, to the extent that the state case remains pending before the Court of Appeals, abstention from exercising jurisdiction is proper under the principles announced in *Younger v. Harris*, 401 U.S. 37 (1971). "*Younger* abstention is appropriate when (1) the federal action would disrupt an ongoing judicial proceeding (2) which implicates important state interests and

B. **Motion for Clarification of Fees**

As discussed above, Howard also requests that funds be withdraw sequentially, rather than simultaneously, from his prison account. Howard argues that the BOP may only garnish 20 percent of his preceding month's income at any one time. In support of this argument, he cites to *Whitfield v. Scully*, 241 F.3d 264 (2d Cir. 2001) and *Skinner v. Govorchin*, 463 F.3d 518 (6th Cir. 2006). After considering his arguments and the applicable law, I will deny the motion.[5]

Title 28 U.S.C. § 1915(b), which governs in forma pauperis status and the payment of partial filing fees, states:

> [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of–
>
> > (A) the average monthly deposits to the prisoner's account; or
> >
> > (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

---

(3) which provides an adequate opportunity to raise constitutional challenges." *Cormack v. Settle-Beshears*, 474 F.3d 528, 532 (8th Cir. 2007). Here, the state case is apparently ongoing; the state proceedings, and especially how those proceedings are conducted, certainly implicate important state interests; and the proceedings before the Court of Appeals would provide an adequate opportunity for Howard to raise his wrongful-foreclosure claims.

[5]Judge Autrey has also denied Howard's same requests in the cases before him for similar reasons. *See Howard v. Fire Ins. Exch.*, Civil Case No. 4:10CV2366 HEA [#24]; *Howard v. Fidelity Nat'l Title Ins. Co.*, Civil Case No. 4:10CV2368 HEA [#27].

> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(1)-(2).

In *Whitfield*, the Second Circuit determined that under § 1915(b)(2), filing fees should be collected sequentially by case, collecting all fees in one case, before moving on to the next cases's assessed filing fees. This system prohibits the prison from assessing more than 20 percent of an indigent prisoner's monthly income, regardless of the number of lawsuits that the inmate has filed. *See Whitfield*, 241 F.3d at 277. When an inmate has filed several actions, the *Whitfield* court decided that each filing fee should be fully satisfied in sequence in the order it was incurred. In reaching this result, the Second Circuit reasoned that "the simultaneous collection of multiple encumbrances could potentially expose 100 percent of a prisoner's income to recoupment." *Id.* at 276. The Second Circuit was concerned that such a result could "pose a serious constitutional quandary as to whether an unreasonable burden has been placed on the prisoner's right of meaningful access to the courts." *Id.* at 277. Stating that a court should "'avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question,'" *Whitfield* held that under § 1915(b)(2), filing fees should be paid sequentially at a constant

rate of 20 percent of the prisoner's income. *Id.* (quoting *Gomez v. United States*, 490 U.S. 858, 864 (1989)).

In *Skinner*, the Sixth Circuit held that § 1915(b)(2) does not allow the administrator of a prisoner's trust account to remove more than 20 percent of the prisoner's preceding month's income at any one time. *See Skinner*, 463 F.3d at 523-24. In that case, plaintiff had filed several cases in federal court, and the state was removing 100 percent of his monthly income. *Id.* at 524. The Sixth Circuit looked at the plain language of § 1915(b)(2) and found that such a practice was "not allow[ed]" under the statute. *Id.*

Other courts addressing this question have reached a different conclusion. In *Newlin v. Helman*, the Seventh Circuit considered a case where the prisoner protested simultaneous orders to pay both his outstanding district court filing fee and his appellate court filing fee. 123 F.3d 429 (7th Cir.1997), *overruled in part on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir.2000). The court noted that "[t]he statute does not tell us whether the 20 percent-of-income payment is per case or per prisoner." *Id.* at 436. Reasoning that, just as a complaint and an appeal can produce two strikes against one prisoner for one case, so too should the district and appellate fees aggregate for payment purposes in one case.

> Otherwise a prisoner could file multiple suits for the price of one, postponing payment of the fees for later-filed suits until after the end of imprisonment (and likely avoiding them altogether). The PLRA is designed to require the prisoner to bear some marginal cost for each

> legal activity. Unless payment begins soon after the event that creates the liability, this will not happen. A prisoner who files one suit remits 20 percent of income to his prison trust account; a suit and an appeal then must commit 40 percent, and so on. Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid-though by then a prisoner is likely to have three strikes and to owe all future filing fees in full, in advance.

*Id.* The court concluded that, if a prisoner files five cases, whether district or appellate, he willingly incurred the risk of having his entire monthly income garnished until the fees are paid. *Id.*

In *Atchison v. Collins*, the Fifth Circuit agreed with the Seventh Circuit and held that § 1915(b)(2) mandates that prisoners pay twenty percent of their monthly income simultaneously for each case they have filed. 288 F.3d 177, 180 (5th Cir. 2002). The court noted that, in order to read the statute consistently, § 1915(b)(2), which requires twenty percent monthly payments, should correspond with § 1915(b)(1), in which the initial partial filing fee is imposed in each case, not just once per prisoner, regardless of the number of suits filed. *Id.* at 180-81. The court concluded that the statute, read as a whole, authorizes a court to collect an initial fee, and directs that same court to collect twenty percent of a prisoner's income for monthly payments, irrespective of the number of suits the prisoner has already initiated. *Id.* at 181. The court stated that to read the statute otherwise would create "absurd results." *Id.* The court also found that no "serious constitutional questions [are] raised" by the simultaneous collection of fees in each case under §

1915(b) because "indigent persons have no constitutional right to proceed in forma pauperis" and "states are constitutionally bound to provide [prisoners] with the necessities of life." *Id.*

Several district courts in the Ninth Circuit have followed *Newlin* and have held that filing fees should be deducted simultaneously, on a per case, rather than a per prisoner, basis. *E.g.*, *Hendon v. Ramsey*, 478 F. Supp. 2d 1214, 1219-20 (S.D. Cal. 2007).

Similarly, in *Lefkowitz v. Citi-Equity Group, Inc.*, the Eighth Circuit followed *Newlin* and held that "the twenty-percent rule should be applied per case." 146 F.3d 609, 612 (8th Cir. 1998). At issue was whether plaintiff, who filed two separate appeals, was responsible for two appellate filing fees (i.e., on a per case basis) or only one (i.e., on a per prisoner basis). The Eighth Circuit found that the fee provisions of § 1915(b) "do not deny prisoners constitutionally guaranteed access to courts" and

> conclude[d] that Congress had a rational basis for treating prisoners differently from nonprisoners by requiring them to pay the filing fees (albeit in installments), i.e., that Congress has a legitimate interest in curbing meritless prisoner litigation, and that making indigent prisoners partially responsible for the costs of their litigation would decrease the amount of such meritless litigation.

*Id.*

The simultaneous deduction of fees in all of a prisoner's cases is the better reasoned approach. First, reading the statute as a whole, it is apparent that a

- 12 -

simultaneous fee collection system is more closely aligned with the language and intent of the statute, as it tracks more closely with § 1915(b)(1)'s initial partial filing fee provisions.  Moreover, as the *Newlin* court noted, allowing the simultaneous collection of fees in all of a prisoner's cases comports with the PLRA's stated goals of requiring prisoners to pay for their actions and reducing frivolous prisoner litigation.  *See Newlin*, 123 F.3d at 436.  And such a scheme does not violate an inmate's access to the courts because, as the United States Supreme Court has stated, "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to  authenticate them, and with stamps to mail them."  *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977).  Finally, this conclusion is bolstered by the Eighth Circuit's holding that filing fees must be taken out on a per case basis.  *See Lefkowitz*, 146 F.3d at 612.  As a result, I will deny the motion.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#19] is granted, and plaintiff's complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for an extension of time [#24] is granted.

**IT IS FURTHER ORDERED** that plaintiff's motion requesting clarification of the Order for payment of filing fees [ #28] is denied.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot, because this case is dismissed.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of June, 2011.